UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                              :
PIQUANTE BRANDS               :
INTERNATIONAL, LTD., et al.,  :
                              :
      Plaintiffs,             :    Civil Action No. 3:08-cv-4248 (FLW)
                              :
                              :
      v.                      :
                              :
CHLOE FOODS CORPORATION,      :
                              :    **OPINION**
      Defendant.              :
                              :
_____:

**WOLFSON, United States District Judge:**

    Presently before the Court is a Motion for Entry of Default Judgment by Plaintiffs Piquante Brand International and Strohmeyer & Arpe Company (collectively "Plaintiffs"). In sum, Plaintiffs allege that Defendant Chloe Foods Corporation ("Defendant"), has, and continues, to infringe upon Piquante Brand International's registered trademark PEPPADEW, in violation of 43(a) of the Lanham Act and state unfair competition laws. Defendant has not entered an appearance before this Court, nor has it responded to the current Motion. For the reasons that follow, Plaintiffs' Motion for Entry of Default Judgment is granted and a hearing shall be scheduled on July 14, 2009 at 11:00 AM to determine damages.

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

    Piquante Brands International is a South African company maintaining its principal place of

business in South Africa.  Pl.'s Compl. ¶4.  As a part of its business, Piquante, applied for, and received a federally registered trademark for PEPPADEW on June 24, 2003.  Id. ¶8.  Piquante alleges that it has advertised, promoted and sold products under the PEPPADEW trademark as early as 1995.  Id. ¶7.  The registration, No. 2,729,883, identifies the goods to be advertise under the PEPPADEW trademark to include:

> preserved, dried and cooked fruits and vegetables; concentrate fruit pulps; jams; jellies; piccalilli; pickles; soups; spreads, namely, fruit-based spreads, cheese spreads, vegetable-based spreads, garlic-based spreads, meat-based spreads; vegetable, meat, and fruit pastes; fruit and vegetable pate; and dips (class 29); and sauces; relishes; ketchups; chutneys, bean paste, almond paste, and alimentary paste (class 30).

Id. ¶8.  In addition, Piquante currently owns a United States Trademark Application, No. 78/760,306, for PEPPADEW & DESIGN.  Id. ¶9.

Strohmeyer & Arpe Company ("S&A"), a licensee of Piquante, is a New Jersey corporation having its principal place of business in Basking Ridge, New Jersey.  Id. ¶5.  Since 2001, S&A has been a licensee of Plaintiffs' PEPPADEW trademark, selling products throughout the United States.  Id. ¶10.  Plaintiffs allege that over this time, they have expended substantial resources, including funds, time, and effort, to promote the PEPPADEW brand.  Id. ¶11.  Consequently, Plaintiffs allege, the purchasing public has come to associate the PEPPADEW trademark with high quality products distributed and produced by Plaintiffs.  Id.

Plaintiff alleges that Defendant, through its website, www.chloefoods.com, has sold, and continues to sell, jarred pepper products under the trademark PEPPERDEWS.  . ¶ ¶ 13-14.  Plaintiffs insist Defendant's use of the PEPPERDEWS began well after Piquante's use and registration of the mark and was done so with the intent to profit off of PEPPADEW's goodwill

and brand association. Id. ¶ 16-18.  In addition, Plaintiffs allege that the marks and the products sold under the marks are extremely similar, and as a result, likely to cause confusion amongst the purchasing public.  Id. ¶¶16, 20.

Plaintiff initiated this action in the United States District Court for the District of New Jersey on August 22, 2008.  On October 10, 2008, Plaintiffs filed a Request for Entry of Default with this Court, which was entered on October 14, 2008.  Plaintiffs assert in their papers that the only contact that they have had with Defendant was Defendant's request that Plaintiffs set aside the Entry of Default without conditions; Plaintiffs refused to do so.  As a result, Plaintiffs filed this Motion for Entry of Default Judgment on February 2, 2009.  Defendant has filed no opposition thereto.  For the reasons that follow, Plaintiffs' Motion for Entry of Default is granted.

## II. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 55 governs the entry of default judgment.  To obtain a default judgment pursuant to Fed. R. Civ. P. 55(b)(2), a litigant must first obtain an entry of default from the clerk of the court pursuant to Fed. R. Civ. P. 55(a).  Once this procedural hurdle has been met, it is within the discretion of this court whether to grant a motion for a default judgment. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000); Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir.1984).  Nevertheless, that discretion is not unfettered, and in considering whether to enter default judgment, the Court should consider: (1) whether the defendants has a "litigable defense; (2) whether the defendant's delay is a result of his misconduct; and (3) if plaintiff would be prejudiced by the denial of default judgment.  Id. Those factors, however, are generally apposite in the context of a party seeking to vacate an entry

of default.  Here, Defendant has not sought relief from the entry of default; as a result, this Court is "'not in a position then to determine whether [defendants have] a meritorious defense or whether any delay is the result of culpable misconduct.'" Days Inn Worldwide Inc. v. Mayu & Roshan, LLC, No. 06-1581, 2007 WL 1674485, at *3 (D.N.J. June 8, 2007) (quoting Carpenters Health and Welfare Fund v. Naglak Design, 1995 WL 20848, at *2 (E.D. Pa. 1995)).  In turn, Plaintiffs will be prejudiced if this Court does not enter default judgment because Defendant's failure to appear deprives Plaintiffs the opportunity to succeed on its claims and vindicate its trademark rights.

That is not to say that default is appropriate where the facts alleged do not warrant it.  Our precedent indicates a preference to dispose of cases on the merits whenever practicable. Hritz, 732 F.2d at 1181 (citations omitted); Directv v. DeCroce, 332 F. Supp. 2d 714 (D.N.J. 2004).  In considering a motion for default, the Court treats all pleadings and allegations of the plaintiff as true.  See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir.1990).  With respect to damages, however, a court need not accept the plaintiff's allegations as true, and "may conduct such hearings or order such references as it deems necessary" to properly determine the amount of damages that should be awarded.  Fed. R. Civ. P. 55(b)(1).

**B. Lanham Act Claims for Trademark Infringement and Unfair Competitions**

Plaintiffs contend that Defendant's use of the mark PEPPERDEWS infringes upon Piquante's registered mark PEPPADEW, in violation of the Lanham Act.  In that regard, Plaintiffs allege that these violations include willful trademark infringement, in violation of 15

4

U.S.C. § 1114,¹ and unfair competition, in violation of 15 U.S.C. § 1125(a).²

At the threshold, the Court notes that claims for federal trademark infringement, 15 U.S.C. § 1114, and federal unfair competition, 15 U.S.C. § 1125, are measured by identical standards. Thus, to prevail on either claim, a plaintiff must demonstrate that (1) it has a valid and legally protectable mark; (2) it owns the mark; and (3) the defendant's use of the mark causes a likelihood of confusion. A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc., 237 F.3d 198, 210 (3d Cir. 2000) (citing Commerce National Insurance Services, Inc. v. Commerce Insurance Agency, Inc., 214 F.3d 432, 437 (3d Cir. 2000)).³ In addition, to prevail on a trademark

---

¹Section 32 of the Lanham Act provides:

Any person who shall, without the consent of the registrant-

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ... shall be liable in a civil action by the registrant

15 U.S.C. § 1114(1).

²Section 43(a) of the Lanham Act, which governs federal unfair competition claims, provides in part:

(A) is likely to cause confusion, or to cause mistake, or to deceive as to ... the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

³A plaintiff seeking relief under the Lanham Act for either trademark infringement or unfair competition may satisfy the first two requirements by demonstrating that the mark is incontestable. A mark is incontestable when the owner can show, either through affidavits or other pertinent evidence, that the mark has been registered and in use for five consecutive years, and no adverse decision has been rendered that challenges the plaintiff's ownership or right to registration. Chanel v. Godashevsky, 558 F. Supp. 2d 532, 536 (D.N.J. 2008). Here, Plaintiffs

infringement claim, the plaintiff is required to show that the defendant's use of the offensive mark is unauthorized. Opticians Association of America v. Independent Opticians of America, 920 F.2d 187, 192 (3d Cir. 1990). Here, Plaintiffs have demonstrated that Piquante is the owner of the PEPPADEW mark, a valid and legally protectable mark. Moreover, Plaintiffs aver that Defendant has not been granted any rights to use the PEPPERDEWS mark or any mark that is substantially similar to the PEPPADEW mark. Thus, this Court must turn to whether Defendant's use of the PEPPERDEWS mark, as alleged in Plaintiffs' Complaint, gives rise to a likelihood of confusion.

Essentially, a likelihood of confusion arises when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." A & H, 237 F.3d 198 (quoting Dranoff-Perlstein Associates v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992)). In Interpace Corp v. Lapp, Inc., 721 F.2d 460 (3d Cir. 1983), the Third Circuit promulgated ten nonexclusive factors to guide the likelihood of confusion analysis. However, in setting forth this test, the Lapp court noted that, in most circumstances, a court engaging in a likelihood of confusion analysis need not go beyond the mark itself to come to its conclusion. Id.; see also A & H, 237 F.3d at 216 ("the general rule that marks should be viewed in their entirety does not undermine the common-sense precept that the more forceful and distinctive aspects of a mark should be given more weight, and the other aspects less weight."). The nonexclusive factors are:

---

have shown that the PEPPADEW mark has been registered since 2003 and that since then, Piquante has made continuous use of the mark. In addition, Plaintiffs aver, through an affidavit of S & A's vice president, that no adverse decision has been handed down that challenges Piquante's ownership or use of the PEPPADEW mark.

6

>(1) the degree of similarity between the owner's mark and the alleged infringing mark;
>
>(2) the strength of the owner's mark;
>
>(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
>
>(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
>
>(5) the intent of the defendant in adopting the mark;
>
>(6) the evidence of actual confusion;
>
>(7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
>
>(8) the extent to which the targets of the parties' sales efforts are the same;
>
>(9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors; [and]
>
>(10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

Facenda v. NFL Films, Inc., 542 F.3d 1007, 1019 (3d Cir. 2008) (citation omitted).

Here, the Court need not engage in a detailed discussion of the Lapp factors because Plaintiffs' Complaint, as alleged and taken as true, establishes violations of sections 32 and 43(a) of the Lanham Act. First, Plaintiffs allege, inter alia, that Defendant has manufactured, advertised, and distributed products under the PEPPERDEWS mark that compete, i.e. jarred pepper products, with Plaintiffs' products distributed under the PEPPADEW mark. Second, Plaintiffs allege that in using the PEPPERDEWS mark, Defendant intended to profit off the goodwill of Piquante's PEPPADEW mark. Third, Piquante's mark is strongly associated with

high quality products that have garnered goodwill amongst consumers and Defendant's products distributed and sold under the PEPPERDEWS mark threaten to confuse Plaintiffs' customers. Finally, and most importantly, Plaintiffs allege that Defendant's PEPPERDEWS mark is substantially similar to Piquante's PEPPADEW mark, dramatically increasing the likelihood of confusion. Accepting Plaintiffs' allegations as true, the Court finds that Defendant's PEPPERDEWS mark infringes on Plaintiffs' PEPPADEWS mark, in violation of sections 32 and 43(a) of the Lanham Act.

**C. New Jersey Unfair Competition Law**

Turning to Plaintiffs' common law unfair competition claim, Plaintiffs allege that Defendant's trademark infringement, and its subsequent sale and distribution of products bearing the offensive mark, are in violation of New Jersey's unfair competition law.  Traditionally, a claim for unfair competition under New Jersey law arose in two circumstances: (1) the passing off of a defendant's goods or services as if they were plaintiff's; or (2) unprivileged limitation. However, the Appellative Division noted that the cause of action is intended to have a far greater reach and clarified  the overarching purpose of the unfair competition law**:**

> [T]he essence of unfair competition is fair play. Thus, the purpose of the law regarding unfair competition is to promote higher ethical standards in the business world. Accordingly, the concept is deemed as flexible and elastic as the evolving standards of commercial morality demand. The judicial goal should be to discourage, or prohibit the use of misleading or deceptive practices which renders competition unfair. The law must be flexible to accommodate those goals.

Ryan v. Carmona Bolen Home for Funerals, 775 A.2d 92 (App.Div.2001) (citations and quotations omitted).  Notwithstanding its intended reach, the analysis of a common law claim for unfair competition under New Jersey law mirrors that of a Lanham Act claim. Cancer Genetics, Inc. v. Hartmayer, No. 07-5463, 2008 WL 323738, at *9 (D.N.J. Feb. 5, 2008); J & J Snack

8

Foods, Corp. v. Earthgrains Co., 220 F.Supp.2d 358, 374 (D.N.J.2002) ("[T]he elements for a claim for trademark infringement under the Lanham Act are the same as the elements for a claim of unfair competition under the Lanham Act and for claims of trademark infringement and unfair competition under New Jersey statutory and common law"). In turn, courts normally subsume their analysis of a common law unfair competition claim into their evaluation of a plaintiff's Lanham Act claim. American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1433 (3d Cir.1994) ("We previously have held that the 'federal law of unfair competition under § 43(a) is not significantly different from the New Jersey law of unfair competition' and have applied the identical test to both claims."); Buying For The Home, LLC v. Humble Abode, LLC, 459 F. Supp. 2d 310, 317-318 (D.N.J.2006). Here, the Court finds, for the same reasons as stated supra, that Plaintiffs sufficiently plead a common law unfair competition claim.

**D. Default Judgment**

As discussed supra, Plaintiffs are entitled to default judgment as this cause of action represents Plaintiffs' only avenue to vindicate its rights under the Lanham Act and New Jersey's unfair competition law. Obviously, due to Defendant's failure to respond to this litigation in any fashion, the Court cannot discern a meritorious defense on behalf of Defendant. Moreover, "[t]he public concern for enforcing the Lanham Act. . .weighs in favor of entering default judgment in this matter." Days Inns, 2007 WL 1674485 at *5. Thus, the Court is satisfied that default judgment is appropriate and warranted in the case at bar. Accordingly, Plaintiffs' Motion for Entry of Default Judgment is granted.

**E. Damages**

Although a plaintiff seeking an entry of default judgment is entitled to have his complaint

taken as true, as stated supra, this Court may not defer to the plaintiff's allegations concerning damages.  In their prayer for relief, Plaintiffs seek: (1) a preliminary and permanent injunction enjoining Defendant's use of the PEPPERDEWS mark; (2) an accounting of Defendant's profits in connection with its sales of products using the PEPPERDEWS mark; (3) compensatory damages as provided by 15 U.S.C. § 1117; (4) an order finding Defendant to have infringed Piquante's PEPPADEW mark; (5) an order finding Defendant to have violated 15 U.S.C. § 1125(a): an award of compensatory damages resulting from Defendant's acts in violation of 15 U.S.C. § 1125(a) and an accounting for an award of all profits realized by Defendant; (6) an award of punitive damages arising out of Defendant's acts of violation of 15 U.S.C. § 1125(a); (7) an order directing Defendant to deliver and/or destroy all products bearing the PEPPERDEWS mark; (8) removal of all references to PEPPERDEWS from Defendant's website; (9) an order adjudging Defendant to be in violation of New Jersey's unfair competition law; (10) an award of compensatory and punitive damages resulting from Defendant's act that violate New Jersey's unfair competition law; and (11) an award of attorney fees and costs.

**a. Injunctive Relief**

Plaintiffs have requested a permanent injunction to prevent any future trademark infringement by Defendant or any related entities.  Under the Lanham Act, an injunction is a "usual and standard remedy." 5 J. Thomas McCarthy, Trademarks & Unfair Competition § 30:1 (4th ed. 2006);  Lermer Germany GmbH v. Lermer Corp., 94 F.3d 1575, 1577 (Fed. Cir. 1996).

> In deciding whether to grant a permanent injunction, the district court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.

Gucci, 354 F.3d at 236-37 (quoting Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir.2001)).

Here, the Court has found that Plaintiffs have proven violations of sections 32 and 43(a) of the Lanham Act; accordingly, Plaintiffs have shown actual success on the merits, and in turn, have suffered an irreparable injury.  Citizens Fin. Group, Inc. v. Citizens Nat'l Bank of Evans City, 383 F.3d 110, 125 (3d Cir. 2004) (trademark infringement amounts to irreparable injury as a matter of law).   The Court orders that Defendant, and any related entities or subsidiaries, cease and desist the use of the PEPPERDEWS mark.  In so doing, Defendant may no longer advertise, distribute, or product products bearing the PEPPERDEWS mark.  Moreover, Defendant shall deliver products bearing the PEPPERDEWS mark to Plaintiffs for their destruction.  15 U.S.C. § 1118.[4]

**b. Compensatory and Actual Damages**

In their moving papers, Plaintiffs concede that they have not been able to ascertain a specific amount of damages; accordingly, this Court shall schedule a hearing on July 14, 2009 at 11:00 AM to determine the amount of damages.

**c. Attorney's Fees**

Finally, Plaintiffs ask this Court to award reasonable attorney's fees, pursuant to 15 U.S.C. § 1117.  Section 35(a) of the Lanham Act provides: "The court in exceptional cases may award reasonable attorneys' fees to the prevailing party."  15 U.S.C. § 1117(a).  "While the statute does not explicitly define the term 'exceptional,' generally a trademark case is exception for purposes of an award of attorneys' fees when the infringement is malicious, fraudulent, deliberate or

---

[4]Upon a proper showing, Defendants can, alternatively, re-label its offending products in a manner that does not infringe upon Plaintiffs' trademarks.

11

willful." Louis Vuitton Malletier and Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 585 (D.N.J. 2002) (citing Securacomm Consulting, Inc. v. Securacomm, Inc., 224 F.3d 273, 280 (3d Cir. 2000). A plaintiff may prove wilfulness by demonstrating that the defendant continued infringing behavior after being given notice.  Alternatively, a court may infer willfulness from the fact that a defendant refuses to respond to the plaintiff's complaint or subsequent motion for default judgment.  Louis Vutton Malletier, 211 F. Supp. 2d at 583 ("The failure of Defendants to appear at the Evidentiary Hearing. . .amounts to their conscious snubbing and blatant disregard of both the legal system and the rights of the Plaintiffs.  The aforementioned conduct was willful."); Chanel, Inc. v. Gordashevsky, No. 05-5270, 2007 WL 316433, at *5 (D.N.J. Jan. 29, 2007) (finding the defendant's failure to respond to the plaintiff's complaint as demonstrative of willfulness).

Here, due to Defendant's abject failure to respond in any fashion to Plaintiffs' Complaint, the Court can infer that the trademark infringement was indeed willful.  Thus, the Court finds that Plaintiffs' Complaint is an "exceptional case" and warrants an award of attorney's fees upon detailed proof submitted to this Court at a damages hearing.

**III. CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiffs Motion for Default Judgment is granted and that Defendant is permanently enjoined from using the infringing mark.  However, an award of damages cannot be entered at this time because Plaintiffs have not submitted the requisite proof.  Thus, a damages hearing will be scheduled on July 14, 2009 at 11:00 AM to ascertain what, if any, damages Plaintiffs are entitled to under the Lanham Act. One week prior, on July 7, 2009, Plaintiffs shall submit all billing records regarding attorney fees and any other

documents related to damages for this Court's consideration.  In addition, Plaintiffs shall serve a copy of this Court's Opinion and Order on Defendant; Plaintiffs shall also serve copies of its billing and damages submissions on Defendant at the same time that they are submitted to this Court.


Dated: June 9, 2009                                                                         s/ Freda L. Wolfson
                                                                              Freda L. Wolfson, U.S.D.J.